UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY MARCUS MAYBERRY, | |
| Plaintiff, | |
| v. | Cause No. 3:19-CV-556-PPS |
| RUSS OLMSTEAD, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Timothy Mayberry, a prisoner without a lawyer, is proceeding in this case on three claims related to his detention at St. Joseph County Jail as a pretrial detainee. [DE 16 at 4.] First, he seeks monetary damages against Deputy B. Dunifin for allegedly "depriving him of clean clothing and soap and toilet paper during the time period from April to June 2019, in violation of the Fourteenth Amendment[.]" *Id.* Second, he claims that Dunifin and Lt. Wisniewski retaliated against him "by subjecting him to repeated shakedowns for filing grievances during the time period from April to June 2019, in violation of the First Amendment[.]" *Id.* Finally, he claims that Captain Russ Olmstead failed "to intervene and stop the Fourteenth and First Amendment violations" described above. *Id.* The defendants, who are each being sued in their individual capacities, now seek summary judgment. [DE 105.]

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). I will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe."). Instead, my sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

**Fourteenth Amendment Claim Against Deputy Dunifin**

Mayberry is proceeding against Deputy Dunifin "for allegedly depriving him of clean clothing and soap and toilet paper during the time period from April to June 2019, in violation of the Fourteenth Amendment[.]" [DE 16 at 4.] Specifically, Mayberry alleged in his complaint that Deputy Dunifin made him wear dirty clothes while withholding soap and toilet paper, which caused him to suffer anal inflammation and a rash. [DE 1 at 2–4.]

Before diving into the facts, let's first sketch out the applicable law. "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* (citation and internal quotation omitted). "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

Here are the facts. At the time of Mayberry's detention at St. Joseph County Jail, Deputy Dunifin was in charge of laundry passes for the jail. [DE 106-1 at 1.] The laundry pass was scheduled to occur once per week for each pod. *Id.* During laundry pass, each inmate could exchange his shirt, pants, towel, and bed sheet to Deputy Dunifin for a new set. *Id.* at 2. Because each inmate is allowed only one set of clothes and linens per week, an inmate could only obtain a new set of clothes and linens by exchanging his old set. *Id.* Additionally, at the same time Deputy Dunifin would provide each inmate with one roll of toilet paper and one bar of soap. *Id.*

Between March 2019 and May 8, 2019, Mayberry submitted several grievances complaining of issues exchanging his clothes and linens and obtaining toilet paper during laundry pass. [DE 106-1 at 2–4.] Specifically, on March 12, 2019, Mayberry submitted a grievance claiming he was denied new clothes and toilet paper during laundry pass. [*Id.* at 2; DE 159-1 at 58.] Deputy Dunifin attests that, on this occasion, he did not provide Mayberry with an exchange of clothes and linens because Mayberry did not arrive at the dayroom in time for the laundry pass to exchange his old clothes and linens. [DE 106-1 at 2.] Mayberry complained in the grievance that he should not be forced to wear the same clothes for two weeks because an officer believes he is moving too slowly. [DE 159-1 at 58.] Deputy Dunifin attests he still provided Mayberry with soap and a roll of toilet paper, which he left outside of his door. [DE 106-1 at 2.] Mayberry claims that he did not receive the toilet paper on this occasion and was forced to use writing paper to wipe himself. [DE 159-1 at 7–8.]

4

A couple weeks later, Mayberry again filed a grievance complaining he did not receive new clothes and toilet paper during laundry pass. [DE 106-1 at 2; DE 159-1 at 59.] Deputy Dunifin attests that, on this occasion, he ran out of time to provide Mayberry with an exchange of his clothes and toilet paper but provided him with new clothes and a new roll of toilet paper the very next day, on March 27, 2019. [DE 106-1 at 3.] Mayberry does not dispute that he received toilet paper the next day, but complains that he was forced to use writing paper to wipe himself on March 26 because no other officer on his pod would give him toilet paper until late that night. [DE 159-1 at 8.]

On April 16, 2019, Mayberry filed a grievance complaining that two of the three towels he had in his possession were taken from him; one he says was his cellmate's and the other extra one he used for a prayer rug. [DE 106-1 at 3; DE 159-1 at 60.] Deputy Dunifin testified that he properly confiscated Mayberry's extra towels because he had not received approval to have a second towel as a prayer rug, and thus he was only authorized to have one towel. [DE 106-1 at 2–3.]

Two more weeks went by, and Mayberry filed another grievance complaining that he had been denied clean clothes. [DE 106-1 at 3; DE 159-1 at 62.] Deputy Dunifin attests that, on this occasion (April 30, 2019), he provided Mayberry with a new sheet, towel, soap, and toilet paper, but did not provide him with new clothes because he had not exchanged his old clothes. [DE 106-1 at 3.] According to Mayberry, Deputy Dunifin did not conduct any laundry pass at all for his entire pod on that day. [DE 159-1 at 9.] In all events, accepting as true that Deputy Dunifin did not conduct any laundry pass for

5

Mayberry's entire pod on April 30, there is no evidence that Deputy Dunifin's failure to conduct laundry pass on that day was intended to punish Mayberry.

On May 8, 2019, Mayberry filed a grievance complaining he was again denied clean clothes during laundry pass. [DE 106-1 at 3; DE 159-1 at 63.] Deputy Dunifin attests that, on this occasion, Mayberry showed up for laundry pass and attempted to place his linens in the bin when it was not his turn. [DE 106-1 at 3.] Deputy Dunifin instructed Mayberry to take his belongings and wait for his turn. *Id.* When it was Mayberry's turn, he requested a new set of clothes, but he did not have his old set of clothes to exchange. *Id.* Mayberry told Deputy Dunifin that he had already placed his clothes in the bin. *Id.* Deputy Dunifin asked a lieutenant to check the cameras, and the lieutenant reported that Mayberry had not brought his clothes to laundry pass. *Id.* Thus, Deputy Dunifin refused to provide Mayberry with a new set of clothes. *Id.* Mayberry maintains that Deputy Dunifin improperly denied him clean clothes, but he does not deny that he did not follow proper laundry procedure. [*See* DE 159-1 at 9–11.] Nevertheless, Mayberry received a new set of clothes from another correctional officer on the next shift. [DE 106-1 at 4.]

Deputy Dunifin attests that, due to the issues during the April 30, 2019, and May 8, 2019, laundry passes, he decided he needed to start isolating Mayberry's cell during laundry pass. *Id.* Specifically, he began having the cell door operator open Mayberry's cell separately from the other cells in the pod during laundry pass. *Id.* This was done to ensure efficient operation of the facility and to avoid additional distractions and complaints from Mayberry. *Id*. Mayberry continued receiving his weekly laundry

6

exchange, bar of soap, and roll of toilet paper separate from the other offenders. *Id.* From that point, Mayberry continued to submit grievances complaining that his cell was being isolated during laundry pass, but he no longer had any complaints that he was not receiving his clothes, linens, soap, or toilet paper. *Id.*

Deputy Dunifin argues that summary judgment is warranted in his favor because his conduct did not rise to the level of a constitutional violation, as he always provided Mayberry with clean clothes, clean linens, toilet paper, and soap within a reasonable amount of time. [DE 106 at 8–10.] It is true that Mayberry was denied access to clean clothes and clean linens during laundry pass on several occasions between March 2019 and May 8, 2019. However, there is no evidence that Deputy Dunifin denied Mayberry a set of clean clothes or linens in order to punish him. Instead, the evidence shows that Mayberry could not exchange his clothes and linens on several occasions either because (1) he did not appear for laundry pass, or (2) he did not provide his old set of clothes and linens in the manner prescribed to exchange for a new set. Regarding Mayberry's assertion that he was denied access to toilet paper and soap, it is undisputed he did not receive toilet paper during laundry pass on March 26, 2019; but Deputy Dunifin attests he provided Mayberry with toilet paper the following day. Mayberry also argues that Deputy Dunifin did not leave a roll of toilet paper outside of his cell on March 12, 2019; but Mayberry provides no evidence that Deputy Dunifin intentionally denied him toilet paper on that occasion.[1] Based on this evidence, no

---

[1] Mayberry also argues that, on March 1, 2019, he "requested toilet paper for nearly seven (7) hours and did not receive any until the pod officer felt unimpeded, which was during a mandatory

7

reasonable jury could conclude Deputy Dunifin denied Mayberry access to clean clothes, clean linens, toilet paper, or soap in order to punish him.

In his response to the summary judgment motion, Mayberry disputes that Deputy Dunifin had a legitimate reason to deny him access to clean clothes, clean linens, toilet paper, or soap during laundry pass. [DE 159-1 at 19–26.] However, in going through each of the instances at issue here, Mayberry has failed to present a genuine dispute that Deputy Dunifin's actions were based on nonpenological reasons.

In addition, Mayberry argues that Deputy Dunifin violated his Fourteenth Amendment rights by arbitrarily isolating his cell from the other cells during laundry pass beginning on May 8, 2019. [DE 159-1 at 24–28.] This is not the claim that Mayberry was permitted leave to proceed on, but even if it were, no reasonable jury could conclude that Deputy Dunifin's decision to isolate Mayberry's cell during laundry pass amounted to punishment within the meaning of the Fourteenth Amendment. Specifically, Deputy Dunifin attests that he began isolating Mayberry's cell during laundry pass to ensure efficient operation of the facility and to avoid additional distractions and complaints from Mayberry. Moreover, it is undisputed that, once Deputy Dunifin began isolating Mayberry's cell during laundry pass, Mayberry had no further issues with receiving clean clothes, clean linens, toilet paper, or soap. Contrary to Mayberry's assertion, changing the laundry procedure to cut down on his complaints—that is, to prevent a basis for a future grievance—is not an impermissible

---

walkthrough at shift change." [DE 159-1 at 7.] But Mayberry does not allege that Deputy Dunifin was responsible for denying him toilet paper on this occasion.

8

penological reason for the change. [DE 159-1 at 26.] Moreover, Mayberry has not identified any cell search that occurred when he did not complain of missing laundry.

In sum, Deputy Dunifin's decision to isolate Mayberry's cell during laundry pass appears to have successfully resolved Mayberry's complaints. In other words, it was a decision that was rationally related to his objective of ensuring efficient operation of the facility and was not excessive in relation to that purpose. *See Kingsley*, 576 U.S. at 398. As a result, there is no evidence that isolating Mayberry's cell caused him any prejudice, and no reasonable jury could conclude otherwise.

Accordingly, because (1) there is no evidence that Deputy Dunifin denied Mayberry access to clean clothes, clean linens, toilet paper, or soap in order to punish him, and (2) Deputy Dunifin's conduct of isolating Mayberry's cell during laundry pass did not amount to punishment within the meaning of the Fourteenth Amendment, no reasonable jury could conclude that Deputy Dunifin violated Mayberry's Fourteenth Amendment rights. Summary judgment is therefore warranted in favor of Deputy Dunifin on this claim.

### First Amendment Claim Against Deputy Dunifin and Lt. Wisniewski

Mayberry is proceeding against Deputy Dunifin and Lt. Wisniewski on this claim "for allegedly retaliating against him by subjecting him to repeated shakedowns for filing grievances during the time period from April to June 2019, in violation of the First Amendment[.]" [DE 16 at 4.]

To prevail on a First Amendment retaliation claim, Mayberry must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation

that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To satisfy the third element, Mayberry must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotation omitted). Once Mayberry makes this showing, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendant carries this burden, the plaintiff may still reach trial by showing that the defendant's reasons were merely pretextual. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

The defendants concede that Mayberry engaged in protected First Amendment activity by filing grievances. [DE 106 at 13.] They also concede that they searched Mayberry's cell on various occasions. *Id.* at 13–14. However, they argue that summary judgment is warranted in their favor because they never searched Mayberry's cell for any improper purpose. *Id.* at 14. Specifically, the defendants argue that they were required by prison policy to search his cell on each occasion that Mayberry claimed either verbally or in writing that he had not received his clothing or linens to ensure he did not have the item he was claiming he had not received. *Id.*

In his response, Mayberry argues that the defendants violated his First Amendment rights because they searched his cell whenever he filed a grievance about not receiving his clothing or linens. [DE 159-1 at 28–33.] The problem is that Mayberry

10

does not provide any evidence refuting the defendants' explanation that they were required to search his cell each time he complained about his clothing or linens in order to ensure that he did not still have those items. This gap in Mayberry's proof is case dispositive because he has to show "that the *fact* of the plaintiff's engagement in protected activity was a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's complaint motivated a response the plaintiff did not particularly like." *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020). As the Seventh Circuit aptly explained, "To hold otherwise would absurdly result in requiring prison officials to respond to every grievance by enacting the prisoner's preferred solution, rather than allowing officials to exercise their own judgment." *Id*.

Mayberry argues that the defendants are not credible based on misrepresentations in their responses to his grievances, but "the prospect of challenging a witness' credibility is not alone enough to avoid summary judgment." *Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 406 (7th Cir. 1998); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."). Mayberry provides no other argument or evidence that the defendants' explanation for the searches was false or pretextual.[2] Thus, the defendants have shown they would have searched

---

[2] Mayberry states in his response, "Besides me no other Detainees/Inmates were isolated and/or repeatedly shaken down during laundry pass; even those that claimed that they were missing items." [DE 159-1 at 32.] But the evidence he cites does not support that proposition and that claim is not something within his personal knowledge. Mayberry also argues in his response that the defendants retaliated against him for filing grievances by depriving him of hygiene products and threatening to place him in segregation, but these allegations are outside of the scope of this claim, as Mayberry is proceeding

11

Mayberry's cell each time he claimed he did not receive clothing or linens regardless of any bad motive, and Mayberry offers no evidence that the defendants' reason for conducting the searches was pretextual. *See Mays*, 575 F.3d at 650; *Valentino*, 575 F.3d at 670. Accordingly, no reasonable jury could conclude the defendants' conduct of searching Mayberry's cell each time he complained that he did not receive clothing or linens violated his First Amendment rights. Summary judgment is warranted in favor of the defendants on this claim.

### Failure to Intervene Claim Against Capt. Olmstead

Mayberry is proceeding against Capt. Olmstead for failing to intervene to stop Deputy Dunifin and Lt. Wisniewski from committing the Fourteenth Amendment violation alleged in Claim 1 and the First Amendment violation alleged in Claim 2. [DE 16 at 4.] Because no reasonable jury could conclude Deputy Dunifin or Lt. Wisniewski violated Mayberry's Fourteenth Amendment or First Amendment rights, as discussed above, no reasonable jury could conclude Capt. Olmstead failed to intervene to stop these constitutional violations. *See Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001)). Thus, summary judgment is warranted in favor of Capt. Olmstead on this claim.

### Conclusion

For the reasons stated, the court:

(1) **GRANTS** Defendants' motion for summary judgment [DE 105]; and

---

against the defendants only for retaliating against him by "subjecting him to repeated shakedowns." [DE 16 at 4.]

(2) **DIRECTS** the Clerk to enter judgment in favor of Defendants and against Plaintiff Timothy Marcus Mayberry.

**SO ORDERED.**

ENTERED: September 20, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT